UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

- - -

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| PLAINTIFF, | ) |
| vs. | ) No.CR10-00049-AHM |
| DARREN SHATTLER, | ) |
| DEFENDANT. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

TUESDAY, FEBRUARY 9, 2010

_____

CINDY L. NIRENBERG, CSR 5059
U.S. Official Court Reporter
312 North Spring Street, #438
Los Angeles, California 90012
*www.cindynirenberg.com*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:
                    OFFICE OF THE UNITED STATES ATTORNEY
                    BY: YVONNE GARCIA,
                        ASSISTANT U.S. ATTORNEY
                    312 NORTH SPRING STREET
                    12TH FLOOR
                    LOS ANGELES, CA 90012
                    213-894-2434


FOR THE DEFENDANT:
                    OFFICE OF THE FEDERAL PUBLIC DEFENDER
                    BY: GERALD SALSEDA,
                        DEPUTY FEDERAL PUBLIC DEFENDER
                    321 EAST 2ND STREET
                    LOS ANGELES, CA 90012
                    213-894-2854

I N D E X

*DIRECT*                          *CROSS*

*PLAINTIFF'S WITNESSES:*

DANNY YAO                    17*(by the Court)*        21

LOS ANGELES, CALIFORNIA; TUESDAY, FEBRUARY 9, 2010

4:30 P.M.

- - - - -

THE CLERK:  Calling Item Number 2, CR10-49, USA versus Darren Shattler.

Counsel, state your appearances, please.

MS. GARCIA:  Good afternoon.  Yvonne Garcia on behalf of the United States.

THE COURT:  Good afternoon.

MR. SALSEDA:  Good afternoon.  Gerald Salseda on behalf of Darren Shattler, who is present in custody.  Also present in the courtroom is his wife, Cynthia Shattler.

THE COURT:  And you've asked for this hearing to support an application to have your client released on bail; is that correct?

MR. SALSEDA:  Yes, Your Honor.

THE COURT:  All right.  Well, I just spent the last few minutes looking at this file.  Before that, I had no idea what this case involved or what was before me.

And let me just get some ground rules down pat.  I will acknowledge that I've never until now had to deal with any requirements under what is known as the Adam Walsh Act, so there may be some need to pin things down.

The recommendation that I've last been given dated today's date of February 9th from the Pre-trial Services

officer, Mr. Yao, is for release of the defendant under certain conditions.  And I told Mr. Yao just moments ago that there is a strong likelihood I will ask him to testify so that his answers to some of the questions I begin to pose to him will be known to both lawyers and to the defendant.

My understanding before we begin to hear from the lawyers and possibly from Mr. Yao is that the government still has the burden of proving by clear and convincing evidence danger to the community and by a preponderance a risk of flight.

Is that still true after the passage of this Adam Walsh Act?

MS. GARCIA:  No, Your Honor.  That is not true. There is a presumption that the defendant is a danger to the community and a flight risk.

THE COURT:  Where is that presumption embodied in the lengthy content of what is now 18 U.S. 3142?  Cite the precise section, please.

MS. GARCIA:  My understanding is that the presumption is actually taken from Section 3142(e), and it cross-references the fact that this is an offense that's listed involving a minor victim.

THE COURT:  Hold on.  Let me find it.

Okay.  So it's (e)(2) that you are referring to?

MS. GARCIA:  I'm sorry. (e)(3)(E).

THE COURT: Okay. That is indeed what the statute now says. It didn't used to say that before the passage of this act.

You agree that that presumption requires you to rebut it?

MR. SALSEDA: Yes, Your Honor.

THE COURT: And for the benefit of the defendant and his wife, unless the lawyer for the defendant can prove otherwise, there is a presumption that this defendant, given that these are crimes involving minor victims -- two victims who happen to be his sons -- is a danger to the community.

And I don't know what the standard of evidence has to be that Mr. Salseda has to demonstrate to overcome that presumption.

Is there anything in the statute that specifies whether it's by a preponderance or by clear and convincing?

MS. GARCIA: My understanding is that it is clear and convincing, although I don't have a statutory citation for that at the moment.

MR. SALSEDA: My understanding is that there is a presumption just like in a drug case. If we present some evidence to rebut that, the standard is clear and convincing for danger to the community and preponderance of the evidence for flight risk.

THE COURT: That's what I said at the outset. So

you're just saying that you just have the burden of putting on some evidence that then shifts the ultimate burden to the government?

MR. SALSEDA: That's my understanding, Your Honor.

THE COURT: Is that your understanding?

MS. GARCIA: That is my understanding, but that ultimately the Court can consider the presumption sort of as if the Court is -- the presumption tips it in favor of the government's evidence.

THE COURT: Well, it depends on what the defendant has told me and -- not told me, but has introduced as evidence, right?

MS. GARCIA: That is correct, Your Honor.

THE COURT: All right. And just before we hear any further argument -- because I don't see any briefs by either side here -- on the issue of flight risk, the government continues to have that burden by a preponderance; is that correct? Not danger to the community, but flight risk.

Is that your understanding, Ms. Garcia?

MS. GARCIA: My understanding is that defendant must first rebut the presumption, but then the burden shifts back to --

THE COURT: It's a presumption of flight risk as well as danger to the community?

MS. GARCIA: That is correct, Your Honor.

THE COURT: Where is that presumption embodied?

MS. GARCIA: Oh, I'm sorry, Your Honor. I misread the statute. You are correct, it is only a presumption for danger. So, yes, the burden is still on the government for flight risk.

THE COURT: Now, what's your basic contention here, Mr. Salseda?

You may be seated, Ms. Garcia.

MR. SALSEDA: Your Honor, we're asking that bail be set as recommended by Pre-trial Services.

This is a very unusual case. It's a presumption case. It's a 15-year mandatory minimum case.

When you hear the words production of child pornography, you go, oh, my God, what are we dealing with, but Mr. Shattler and his wife are nudists, and they took -- he took pictures of his 7-year-old and 13-year-old son. They are practicing nudists.

With regard to danger to the community --

THE COURT: Well, there's some dispute about that because according to what I read on the complaint, his wife -- is her name Mrs. Shattler, too?

MR. SALSEDA: Yes.

THE COURT: She was interviewed. She said that she had -- she gave a story. She began to cry, stated that she had lied, that she never takes any naked pictures of her children,

only the defendant does; that she had never seen the pictures, and that she did not think that what she did see when she was shown the pictures would be nudist's photographs.

MR. SALSEDA:  Well, Your Honor, I had the opportunity for the first time today to look at those pictures, and 99 percent of them in my opinion from my perspective were nudist-type pictures.

There's one photograph of the son where he has -- the 13-year-old son where he has a partially erect penis.  Then there is a second paragraph that zooms right in on that.

But for that photograph, if Your Honor looked at them, I think Your Honor would characterize them as -- well, let's put it this way.  There is no sexual interaction at all. There's no sexual acts being committed.

Some of the photos are taken outside with the kids running around naked, sometimes in a hot tub.  One photograph, Mr. Shattler is sitting on a couch with both of this children. One photograph --

THE COURT:  Is he clothed?

MR. SALSEDA:  No.  Everybody is nude.

There's another photograph where they are in a hot tub.  Ms. Shattler is depicted in the photograph along with one of the children.  My belief is that everyone in there is nude.

THE COURT:  Your belief?  Based on what?

MR. SALSEDA:  Based on what I saw, Your Honor.

THE COURT:  Okay.

MR. SALSEDA:  I mean, just from what I could tell.

THE COURT:  Okay.

MR. SALSEDA:  In the search of Mr. Shattler's computers, there was no finding of any kind of child pornography whatsoever.

There's no assertion by the --

THE COURT:  The photograph that you told me about --

MR. SALSEDA:  Yes, Your Honor.

THE COURT:  -- the two photographs, really --

MR. SALSEDA:  Yes.

THE COURT:  -- they were on somebody else's computer, right?

MR. SALSEDA:  No, Your Honor.  They were on his camera, and he apparently had taken pictures a couple days before they were seized.  They were not -- they were in his home on his camera.

THE COURT:  They were not disseminated or obtained by somebody else?

MR. SALSEDA:  Not those photographs, no, Your Honor.

THE COURT:  Do you agree with that, Ms. Garcia?

MS. GARCIA:  Yes, Your Honor.

The photo he is referencing is alleged in Count Four of the indictment.  That is the close-up shot of the 13-year-old victim's penis.

That photo was not, as far as we know, disseminated over the internet.  It was found on his camera.

The other three photos alleged in Counts Ones through Three were disseminated over the internet because they were found on another --

THE COURT:  Because what?

MS. GARCIA:  They were found on another suspect's computer.

THE COURT:  And what do they depict, Counts One through Three?

MS. GARCIA:  Those depict the boys nude, and the government's contention is that the focus of the photos is the boys' genitalia.  Although it's not a close-up shot, the photo is focused on their genitals.

In one of the photos, for example, the boy is placed in a very unnatural pose leaning back over a chair.  His face is not even depicted in the photo.  It's simply --

THE COURT:  Which boy, the 12-year-old or the 7-year-old?

MS. GARCIA:  It would be the 12-year-old, Your Honor, A.S.

THE COURT:  Okay.  And those were found on somebody else's computer, right?

MS. GARCIA:  That's correct, Your Honor.

THE COURT:  And your position is, now at least -- you

don't have to tell me exactly how you would try the case -- that those are photos that were not sexually explicit and that were taken because of this family's interest in nudist behavior?

MR. SALSEDA:  Yes, Your Honor.

THE COURT:  And how did the photos get elsewhere?

MR. SALSEDA:  Your Honor, my understanding is Mr. Shattler would take photographs, a lot of photographs of a lot of different things.  Instead of keeping them on his computer, he would download them to a Flicker account, and that Flicker account was hacked into and all of his photographs were lost.

THE COURT:  What is a Flicker account?

MR. SALSEDA:  I believe it's an account where -- like an off-site storage for photographs where you have to pay a certain amount to store your photographs.  That's my understanding of a Flicker account.

THE COURT:  Is that your understanding, Ms. Garcia?

MS. GARCIA:  Yes, Your Honor.  It's a website where people can upload photographs and store them there essentially so they don't take up memory on their own computers.  And it's a website that -- it's on the internet, so by putting the photos on there, you're transporting them over the internet.

THE COURT:  Well, did you read the complaint in this case, Mr. Salseda?

MR. SALSEDA:  I sure did, Your Honor, yes.

THE COURT:  Well, I just read it, too, a few minutes ago, and according to Paragraphs A-11 through, I guess, 14, which describe in gruesome detail some of these pictures -- and they were found on the encrypted hard drives of a man-named-Lee's computer, right?

MR. SALSEDA:  Yes, Your Honor, who I understand does not know Mr. Shattler.

THE COURT:  And there is a school symbol with the initials MPH, which stand for Mary Putnam Henck, H-E-N-C-K; is that right?

MR. SALSEDA:  Yes.

THE COURT:  And those were initials that appeared in the background of one of the images; is that correct?

MR. SALSEDA:  Yes.

THE COURT:  And there's somebody named Eddie Barlow who lived in this home?

MR. SALSEDA:  At one time he lived there, but he moved out several months ago.

THE COURT:  Before this investigation began?

MR. SALSEDA:  Yes.

THE COURT:  So what's the government's evidence as to how Lee got these pictures, Ms. Garcia?

MS. GARCIA:  Your Honor, what we do know is that Lee obtained the pictures over the internet.

My understanding is he has not made any allegation

that he obtained them directly from Mr. Shattler, so at this point we don't know directly who the source was, but that they were obtained over the internet.

THE COURT:  But how?  You know, the internet is a very wide, broad concept.

MS. GARCIA:  Well, to give you a broader background --

THE COURT:  Did he get them from some child porn site?

MS. GARCIA:  He may have, Your Honor.  Mr. Lee was a member of a child pornography message board that is part of a different, larger prosecution.  And as part of that message board, basically it was aimed at trading child pornography images of young boys, including prepubescent boys.  So Lee clearly had an interest in that type of child pornography.

These images were not obtained from the message board, at least as far as we know, but Lee may have had many different sources including perhaps child pornography websites or other people with whom he was communicating over the internet that may have provided these images to him.

THE COURT:  According to this complaint, the younger boy, W.S., right?

MS. GARCIA:  That's correct.

THE COURT:  And where are the boys now?

MR. SALSEDA:  Foster care.

THE COURT: These images that you were describing, Ms. Garcia, are they the ones that are referred to in Paragraph 29 of the complaint?

MS. GARCIA: The images I was --

THE COURT: Particularly in Paragraph 29(a), are they the images that are referred to in the indictment?

MS. GARCIA: The images in the indictment are referred to in Paragraphs 13(a), (b) and (c). Those would be Counts One through Three.

And then Count Four is referred to -- that's correct, at Paragraph 29(a).

THE COURT: Okay. Do you have any statements from the boys, Ms. Garcia?

MS. GARCIA: Yes, Your Honor, and those statements are listed in Paragraphs 19 and 20. Those are the primary statements made by the boys. They were interviewed a second time, and the statements made by the boys during the second interview were listed in Paragraphs 31 and 32. The second statements were much briefer.

THE COURT: The what?

MS. GARCIA: The second statements were much briefer than the initial interview.

THE COURT: So, look, these crimes that are alleged are crimes of violence, and I still don't quite follow your argument.

What's the crux of your argument, Mr. Salseda, as to why the presumption that he's a danger to the community has been overcome?

MR. SALSEDA:  Well, it's -- Your Honor, the wife is willing to --

THE COURT:  That's an issue of flight risk.  I'll talk to you about that in a minute, but I'm talking about danger to the community.

MR. SALSEDA:  Well, he's going to be living at another residence 45 miles away from his wife's residence. He's going to be confined to his home with electronic monitoring.  He is to have no contact with his children until this case is resolved.

There will also be the Adam Walsh-type of conditions that are listed in the Pre-sentence Report, for example, that he not possess or have access to either in the home or workplace or any other location any device which offers internet access, except as approved by Pre-trial Services.

THE COURT:  Okay.  Let me just get to the points that I think are necessary for a record to be complete.

Would you please step forward, Mr. Yao, and bring with you your recommendation and be sworn, please, by Mr. Montes.

THE CLERK:  Please raise your right hand.

Do you solemnly swear that the testimony you shall

give in the cause now before this Court shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

THE CLERK:  Please be seated.

Please state your full name and spell your last name for the record.

THE WITNESS:  Danny Yao.  D-A-N-N-Y.  Y-A-O.

DANNY YAO,

having been first duly sworn,

testified as follows:

THE COURT:  Please proceed to the witness chair, Mr. Yao.  Do you have your recommendation with the conditions of release that you put in?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Please open it up and look at it.

In the list of boxes on the first page under the conditions of release, the fourth box says, "Reside as approved by PSA and do not relocate without prior permission."

Do you see that?

THE WITNESS:  Yes, Your Honor.

THE COURT:  And then it gives a name of Teress Molloy.  Who is Teress Molloy?

THE WITNESS:  That is the defendant and the defendant's wife's friend.

THE COURT:  Have you met with Teress Molloy?

THE WITNESS:  No, I spoke with her on the phone.

THE COURT:  Have you visited the house on Sapphire Street in Mentone?

THE WITNESS:  No, Your Honor.

THE COURT:  Have you determined to what extent there are computers in that home?

THE WITNESS:  I briefly spoke to Ms. Shattler, and she indicated that there are no computers.

THE COURT:  Ms. Shattler?  Did you speak to Ms. Molloy?

THE WITNESS:  No, Your Honor.

THE COURT:  Do you know who else lives in that home with Ms. Malloy?

THE WITNESS:  I believe her boyfriend.

THE COURT:  What's that person's name?

THE WITNESS:  I wrote it down, Your Honor.  I don't have it at this time.

THE COURT:  Further on down the page, there is a condition that he not possess any firearms.  Do you know to what extent that home is free of firearms, ammunition, destructive devices or other dangerous weapons?

THE WITNESS:  I do not believe they have any firearms.

THE COURT:  Based on what?

THE WITNESS:  Um --

THE COURT:  What Ms. Shattler told you?

THE WITNESS:  That's correct, Your Honor.

THE COURT:  Did you ask that question to Ms. Molloy?

THE WITNESS:  No.

THE COURT:  Now, there's a condition that requires that the defendant agree to submit to a search of his person or property.  Did you inform Ms. Molloy that at any time without warning her property could be searched?

THE WITNESS:  No, Your Honor.

THE COURT:  Did she tell you that she would agree, even if you didn't bring it up yourself, to have her property searched at any time?

THE WITNESS:  No, Your Honor.

THE COURT:  On the next page under Home Detention, the standard language is that the individual would be restricted to his residence.  It says, "You are restricted to your residence," but you're talking about Ms. Molloy's residence, right?

THE WITNESS:  That's correct, Your Honor.

THE COURT:  And further on, it says, "In order to determine compliance, you will agree to submit to a search of your person and/or property."  But once again you did not notify or discuss even with Ms. Molloy that there would be such searches of the property, right?

THE WITNESS:  That's correct, Your Honor.

THE COURT: And in order to know whether or not there is compliance with all of these conditions, that search could be a necessary means of assuring compliance, not just to see whether there is an ankle bracelet alert; is that correct?

THE WITNESS: Yes, Your Honor.

THE COURT: Are there any children in that home?

THE WITNESS: No, Your Honor.

THE COURT: How do you know that?

THE WITNESS: I asked Ms. Molloy and she indicated to me that.

THE COURT: All right. Is the home ever visited by children, a niece, a nephew, a child who is away at boarding school or anything of that nature?

THE WITNESS: That, I am not aware of. I don't know either way.

THE COURT: And do you know to what extent how near the closest schoolyard or park or playground is to that residence?

THE WITNESS: No, Your Honor.

THE COURT: Do you know whether these people, Molloy and her boyfriend -- did you say it's her boyfriend?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you know whether they belong to this nudist group, if there is such a group that the defendant belongs to?

THE WITNESS:  No, I'm not aware, Your Honor.

THE COURT:  Do you wish to ask any further questions, Ms. Garcia?

THE WITNESS:  No, Your Honor.

THE COURT:  Do you wish to ask any further questions, Mr. Salseda?

MR. SALSEDA:  Just one, Your Honor.

CROSS-EXAMINATION

BY MR. SALSEDA:

Q.   Mr. Yao, with regards to the condition that Mr. Shattler reside at a residence approved by Pre-trial Services, is it your normal practice to visit the location and make sure that it's in compliance with Pre-trial Services before you allow him to stay there?

A.   We do make an initial home visit where we do that.

Q.   And some of the questions the judge asked you that you didn't know the answer to, you can find that out, correct?

A.   That's correct.

MR. SALSEDA:  Thank you.  No further questions.

THE COURT:  But as of now, is it correct, Mr. Yao, that you have not made that visit?

THE WITNESS:  That's correct.

THE COURT:  Do you want to be heard, Mr. Salseda, as to how the presumption of danger to the community has been overcome in light of the lack of information under my

underlying and necessary to support Mr. Yao's recommendation?

MR. SALSEDA:  Your Honor, my understanding of the presumption is that the defendant need only present some credible evidence showing the defendant is not a flight risk or danger to the community.  It's just some credible evidence. And I think we've met that with all these different conditions, and with the fact that we've separated --

THE COURT:  No.  The conditions are in evidence -- well, maybe, maybe you could consider it evidence, but the conditions haven't been supported.  That's my concern here.

MR. SALSEDA:  Well, Your Honor, they can be -- the burden shouldn't be on Mr. Shattler to ask all the right questions for the recommendation.  Or perhaps maybe what Your Honor is doing is wanting me to find out the answer to those questions.

THE COURT:  I'm not going to ascribe my ultimate objective.  I'm only trying to make sure that the record is adequate to enable me to make the findings that the law and the statute presumes are against your client's interest.

I don't think that evidence has been demonstrated.

It could be, perhaps -- and maybe you'll have it available at a later application -- but right now, given the nature of the crime, given the mandatory minimum, which I didn't even know was -- it's a very lengthy mandatory minimum of 15 years -- given what you acknowledged at the outset to

your credit was a very unusual case where it's apparent who is responsible for the images of these minor children that somehow got in the hands of third parties, I don't think that you've overcome that presumption.

MR. SALSEDA:  Well, let me argue then, if I could.

Mr. Shattler is 42 years old, has no prior convictions of any kind.  He's a Gulf War veteran.  He served in the Gulf War as a medic.  He was honorably discharged.  He's been working as a nurse for the last 21 years.

THE COURT:  With school-aged children, right?

MR. SALSEDA:  Yes.

THE COURT:  And that is not something he'll be permitted to do.

MR. SALSEDA:  Yes.

And last year, he was voted employee of the month. He has no alcohol or substance abuse problems of any kind. It's our position that the danger can be mitigated by having Mr. Shattler have no contact with his children and live outside --

THE COURT:  It wouldn't be just with his children.

MR. SALSEDA:  Pardon me, Your Honor?

THE COURT:  It wouldn't be just with his children. His children appear to have been the ones whose images were taken who will be depicted as the victims --

MR. SALSEDA:  Of course.

THE COURT:  -- and understandably so, but it would be all children.

MR. SALSEDA:  Yes, of course, Your Honor, but that's -- the most important thing is he's not going to have contact with his children.  And the actual conditions recommended by Pre-trial Services are very onerous, and he can't be in the presence of a child without an 18-year-old in his presence.

And Your Honor talks about the very serious nature of these offenses, and they are very serious, but -- and the reason I said this is a different case is because most child production -- child pornography production you would expect there to be sexual acts.  There is none of that here.

THE COURT:  Well, wait a minute.  Let's be precise. I'll acknowledge I haven't looked at the pictures, and I probably will have to, and because I'll have to, I will, but according to what I have been told, one of the pictures is explicitly sexual, the one in Count Four.

MR. SALSEDA:  What I was talking, Your Honor, about is sexual acts or sexual conduct.  I haven't seen any pictures that depicts sexual acts or sexual conduct.

THE COURT:  That is, I think, something of a red herring, Mr. Salseda, because acts can be explicitly sexual even though they don't involve more than one person in the image and they don't involve touching or acts of intercourse

between two or more people.

MR. SALSEDA:  Well, it's all degrees, Your Honor.  I am trying to let the Court know that on the scale of child pornography, what we have here appears to me to mostly be what you would see as nudist-type photographs.

There's no indication from the children that they --

THE COURT:  Do you have any evidence of nudists associations, membership in nudist clubs or --

MR. SALSEDA:  Yes.

THE COURT:  -- or receipts for nudist conventions or whatever they do?

MR. SALSEDA:  Yes.  Apparently, he has a membership card.  There is a lawyer who runs the organization.

They have sent me all kinds of material on nudists and their lifestyle and how it's asexual.  It's not designed for sexuality, and how -- the material I have depicts grandfathers with a couple little kids standing nude by a lake.

So understanding this case requires understanding a little bit of the nudist culture, which I'm just learning about, but there's no allegations by the children that they were sexually abused at all.

Also, you would think in this type of a case, if somebody has a sexual interest in children, you would find child pornography on their computer.  Mr. Shattler had none of that on his computer.

THE COURT:  Is that the case, Ms. Garcia?

MS. GARCIA:  Yes.  There are two images that are found where it's unclear whether it is images of the boys and we've not made a determination, but for the most part, other than those two images, we have no reason to believe --

THE COURT:  What do those images show regardless of who it is that they show?

MS. GARCIA:  One looks like a young child, but the lighting is very dark, and the hair on the child is a little bit longer, so it's difficult to tell whether that is one of the boys simply with longer hair at a young age.  We don't know that at this time.  And then another photo is another close-up shot of a penis, but it's unclear --

THE COURT:  Just of the genitalia?

MS. GARCIA:  Just of the genitalia.  And we've not yet had an opportunity to interview the boys again to find out if that is, in fact, them or if it's an image of another person.

MR. SALSEDA:  It appears --

THE COURT:  Do you have the images that are the subject of the pending indictment in the courtroom here?

MS. GARCIA:  I don't have them in the courtroom, Your Honor.

THE COURT:  Do you have them, Mr. Salseda?

MR. SALSEDA:  No, Your Honor, but I think it would be

good for the Court to see what I saw this morning.

THE COURT:  Well, I would be prepared to see them if they were here.  They're not here, so I can't see them.  But you don't dispute the characterization of the one in Count Four, correct?

MR. SALSEDA:  No, Your Honor.

THE COURT:  Look, I'm going to deny the application but without prejudice to your renewing it.

MR. SALSEDA:  Very well.

THE COURT:  I need much more assurance that the risk of danger to the community has been rebutted to some extent that would then put the burden of establishing by clear and convincing evidence back on the government.

I think you should assemble all the information you can about flight risk, too.

Your client does seem to have a lot of deep roots in the community, and I don't know what the status of the home is or the other resources available to make the impact of any flight devastating to the people he presumably loves, who are his family members, so package that as well.

I'm not going to defy the law or defy the burdens, but I am going to apply them carefully, and I think I need more information to apply them in a way that would enable me correctly to draw the conclusion that your client should be released pending trial.

MR. SALSEDA:  Very well, Your Honor.

THE COURT:  So that's my ruling.

And you should take that to heart.  I don't think you've done your homework as carefully as I would have expected, Ms. Garcia, so you've got some work to do because I'm sure Mr. Salseda is going to be back here, and he has a right to be back here.  And next time, if there is such a hearing, bring your evidence, including those pictures that are the subject of the indictment.

MS. GARCIA:  Yes, Your Honor, I'll do that.

THE COURT:  All right.  We're adjourned.

*(Proceedings concluded.)*

--oOo--

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA