ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
YVONNE L. GARCIA (Cal. State Bar No. 248285)
Assistant United States Attorneys
Violent & Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, CA 90012
     Telephone:  (213) 894-0719
     Facsimile:  (213) 894-3713
     Email:    yvonne.garcia@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. CR 10-00049-AHM |
| | ) |
| | ) GOVERNMENT'S TRIAL MEMORANDUM |
| Plaintiff, | ) |
| | ) [18 U.S.C. § 2251(b): Production |
| v. | ) of Child Pornography; 18 U.S.C. |
| | ) § 2252A(a)(5)(B): Possession of |
| DARREN SHATTLER, | ) Child Pornography] |
| | ) |
| Defendant. | ) Trial Date: July 20, 2010 |
| | ) |
| | ) |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its trial memorandum for the above-captioned case.  The government respectfully reserves

//

//

//

//

//

the right to submit additional memoranda, if appropriate, to
address issues that may arise at trial.

DATED: July 15, 2010          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


            /s/
YVONNE L. GARCIA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**I.**

**CASE SCHEDULING MATTERS**

A.   Trial is set for July 20, 2010, at 8:00 a.m., before the Honorable A. Howard Matz, United States District Court Judge.

B.   The estimated time for trial is approximately one to two days for the government's case-in-chief.

C.   Defendant Darren Shattler ("defendant") is released on bond.

D.   Trial by jury has been waived.  On July 12, 2010, defendant filed a written waiver of trial by jury.

E.   The government anticipates calling approximately eight witnesses in its case-in-chief, absent any stipulations.

F.   There are no pending motions before the Court as of the filing of this memorandum.

**II.**

**THE INDICTMENT AND ELEMENTS OF THE OFFENSE**

Defendant is charged in a four-count Indictment, which charges defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a).  Defendant is also charged in a single-count First Supplemental Information, which charges defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

A.   Offense Elements

The elements of production of child pornography, in violation of 18 U.S.C. § 2251(a), are:

(1) at the time, the victim was under the age of 18;

(2) the defendant employed, used, persuaded, or coerced the

3

victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

(3) Either:

    (a) The defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce; or

    (b) The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce; or

    (c) The visual depiction was mailed or actually transported across state lines or in foreign commerce.

See Ninth Cir. Model Crim. Jury Instr. No. 8.150 (2003).

The elements of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), are:

(1) defendant knowingly possessed matter, namely, a Nikon CoolPix L100 digital camera, serial number 30140146, which the defendant knew contained a visual depiction of a minor engaged in sexually explicit conduct;

(2) defendant knew that such visual depiction contained in the matter, a computer hard drive, showed a minor engaged in sexually explicit conduct;

(3) defendant knew that production of such visual depiction involved use of a minor in sexually explicit conduct; and

(4) the visual depiction had been either:

    (a) mailed, shipped, or transported in interstate or foreign commerce, or

    (b)  produced using materials that had been mailed,

4

shipped, or transported in interstate or foreign commerce by any means, including by computer.

B.    Definitions

The term "minor" means any person under the age of eighteen years.  18 U.S.C. § 2256(1).

The term "producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising."  18 U.S.C. § 2256(3).

The term "visual depiction" is defined as undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.   18 U.S.C. § 2256(5).  It is further defined as any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means.  18 U.S.C. § 2256(8).

"Matter" is a physical media capable of containing images such as a computer hard drive or disk.  United States v. Lacy, 119 F.3d 742, 748 (9th Cir. 1997).

"Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

In determining whether any exhibition of the genitals or pubic area of a minor is "lascivious," a jury may consider the following factors:  (1) whether the focal point of the visual

5

depiction picture is the minor's genitals or pubic area; (2) whether the setting is sexually suggestive as, for example, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose, considering the age of the minor; (4) whether the minor is clothed or nude; (5) whether the picture suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response from the viewer.  United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986); see also United States v. Overton, 573 F.3d 679, 686 (9th Cir. 2009) (quoting the Dost factors).

A visual depiction need not involve all of these factors in order to be a lascivious exhibition of the genitals or pubic area.  United States v. Arvin, 900 F.2d 1385, 1391 n.4 (9th Cir. 1990) (lasciviousness is a fact for the jury to determine; jury correctly instructed on eight factors it may consider and that "the weight or lack of weight" to give to any one factor was for jury to decide).  The government need not prove that the minor depicted is showing sexual coyness or a willingness to engage in sexual conduct, is actually engaging in sexual conduct, or is demonstrating any erotic reaction, because minors are not necessarily mature enough to project sexuality consciously. Arvin, 900 F.2d at 1389-91; United States v. Wolf, 890 F.2d 241, 244-45 (10th Cir. 1989); United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987) ("'it would be almost incredible' that a child of these years would register sexual coyness") (citation omitted).

## III.

## STATEMENT OF FACTS

The government intends to prove at trial the following facts, among others:

A.   Discovery of Child Pornography Images Depicting Defendant's Two Minor Sons, A.S. and W.S.

The FBI and USPIS are investigating a secret, members-only online message board named "Lost Boy."  Lost Boy is a "boy lovers" website dedicated to adult men who are sexually interested in young boys.  Lost Boy's main purpose is the trading of child pornography depicting young boys.  One member of the Lost Boy message board is Justin Lee, who uses the screen name "HarryPotter."  Lee was arrested on or about August 14, 2009, in relation to his participation in the Lost Boy message board.

While searching Lee's computer, U.S. Postal Inspector Brian Bone examined a folder located in one of Lee's hard drives, entitled "13yo and 8yo."  Within that folder there were approximately 94 images containing the same two minor boys.  The collection included images depicting the lascivious display of the boys' genitals.  Inspector Bone digitally enhanced some of the images to identify items in the background of the images, with the hope that it would help identify the child victims depicted in the images and/or the offender(s).  By enhancing the images, Inspector Bone was able to identify the victims as defendant Darren Shattler's two sons, A.S. and W.S., as well as

7

their residence in Crestline, California.[1]

B.    Search of Defendant's Residence and Computer Media

A state search warrant was executed at the Shattler residence on November 10, 2009.  A follow-on federal search warrant was obtained the next day.  Filter agents examined Shattler's Nikon Coolpix L100 digital camera and were able to recover images from the media card.  These images depict A.S. and W.S. in various stages of undress, including images of A.S. and W.S. completely naked and lasciviously displaying their genitals. For example, one image depicts a close-up shot of A.S.'s partially erect penis, and forensic data for that photograph, known as Exif data, shows that defendant purposely zoomed in on A.S.'s penis only seconds after taking a photograph of A.S.'s entire body.  In addition, over one hundred images depicting A.S. and W.S. naked, as well as approximately three images of what appears to be at least one additional unidentified nude child, were found on defendant's HP laptop computer.

C.    Defendant's Statements

That same day, after waiving his Miranda rights, defendant agreed to be interviewed and made the following statements, among others:

• Defendant admitted that he took the photographs in question of his children.

• Defendant admitted that approximately one year ago, he walked into the front room of his residence while his

_____

[1] There is no evidence, however, that Shattler is a member of the Lost Boy message board, or that he distributed the images of his two sons directly to Lee.

8

son A.S. was masturbating.  Defendant stayed in the room to watch A.S. masturbate until he (A.S.) ejaculated.

• Defendant stated that there was a second time when he watched A.S. masturbate.  During that incident, A.S. was masturbating with W.S. in the room, so defendant told A.S. to stop because W.S. was too young.

• Defendant claimed that he is a nudist.

D.    Interviews of Defendant's Family Members

The same day, all of defendant's family members -- his wife and two sons -- were interviewed by law enforcement.  These interviews were recorded.  The government and the defense anticipate stipulating to the admission of these interview recordings and to playing the entire recordings at trial, with the Court's permission.

Both of defendant's sons identified defendant as the person who took the photographs in question.  W.S. specifically told the Child Forensic Interviewer that his dad (defendant) told him not to talk about what goes on at home.  At first, defendant's wife stated that both she and defendant took photographs of their children naked because they were nudists.  Later in the interview, however, defendant's wife admitted that she, in fact, did not take photographs of her children naked.  Defendant's wife admitted that she could see how some of the photographs were more provocative and she would not consider them to be typical nudist photographs.

//

9

**IV.**

**LEGAL AND EVIDENTIARY ISSUES**

A.    Evidence of Knowledge

In order to be found guilty of production of child pornography, the defendant need not know that the visual depictions or materials used to produce such depictions had been shipped or transported in interstate or foreign commerce.  See United States v. Robinson, 137 F.3d 652, 655 (1st Cir. 1998).

With respect to possession of child pornography, the government must prove defendant both knew that he possessed sexually explicit materials on his computer and that the materials depicted children, not adults.  X-Citement Video Inc., 513 U.S. at 78 (holding that the scienter requirement "extends to both the sexually explicit nature of the material and to the age of the performers.").  In addition, the government must prove that the children photographed were actual children.  See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 250 (2002); United States v. Rearden, 349 F.3d 608, 612 (9th Cir. 2003).  As to all three knowledge prongs, the government anticipates introducing an image of child pornography found on defendant's Nikon Coolpix L100 digital camera, as well as testimony that the image depicts a minor, that the minor is a real child, and that defendant took the photograph in question.

B.    Age of Children

Expert medical testimony is not necessary to prove the age of children depicted in alleged child pornography images where it is obvious from the images themselves that they are of children.

Rearden, 349 F.3d at 614.

## C.   Use of Real Children

Expert testimony is not required to prove that the children depicted in alleged child pornography are actual rather than virtual.  United State v. Irving, 452 F.3d 110, 122 (2nd Cir. 2006) ("[A] reasonable jury could conclude that the images depicted real children solely on the basis of the [video] images themselves."); United States v. Sims, 428 F.3d 945, 956-57 (10th Cir. 2005) (juries can determine based on the image alone and without expert evidence, that the image is actual) (quotations omitted).  Furthermore, the government anticipates calling witnesses who have personal knowledge that the children depicted in the images are real.

## D.   "On or About"

"The government ordinarily need only prove that the crime occurred on a date reasonably near the one alleged in the indictment [or information], not the exact date."  United States v. Tsinhnahijinnie, 112 F.3d 988, 991 (9th Cir. 1997).  The Ninth Circuit has found a difference of eighteen or nineteen days to be immaterial.  United States v. Hinton, 222 F.3d 664, 673 (9th Cir. 2000); Lelles v. United States, 241 F.2d 21, 25 (9th Cir. 1957).  Only when the difference involves a large difference in time has the Ninth Circuit found that the "reasonably near" standard has not been met.  See United States v. Casterline, 103 F.3d 76 (9th Cir. 1996) (holding that seven months is not reasonably near); Tsinhnahijinnie, 112 F.3d 998 (holding that two years is not reasonably near).

E.   Duplicates

The government anticipates that it may introduce duplicates of the child pornography images found on the computer hard drive of Justin Lee and on defendant's Nikon Coolpix L100 digital camera.  A duplicate is admissible to the same extent as an original unless there is a genuine question as to the authenticity of the original or, in the circumstances, use of the duplicate would be unfair.  Fed. R. Evid. 1003.

F.   Chain of Custody

To avoid defects in chain of custody, there must be a showing that the evidence is in substantially the same condition as when it was seized.  United States v. Matta-Ballesteros, 71 F.3d 754, 768-69 (9th Cir. 1995).  Alleged gaps in a chain of custody go to the weight of the evidence, rather than its admissibility.  Id. at 769.

There is a presumption of regularity in the handling of exhibits by public officials.  United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), overruled on other grounds by United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).  Factors to be considered in the court's determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.  Kaiser, 660 F.2d at 733.

G.   Authentication and Identification

The Federal Rules of Evidence treat authenticity and identification under Rule 901 as simply "a special aspect of relevancy."  Fed. R. Evid. 901(a) (Advisory Committee Notes).

Under Rule 901, the condition or fact to be satisfied is whether there is sufficient evidence that the item proffered is what the proponent claims. <u>United States v. Whitworth</u>, 856 F.2d 1268, 1282-83 (9th Cir. 1988).

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a <u>prima facie</u> showing of authenticity. <u>United States v. Black</u>, 767 F.2d 1334, 1342 (9th Cir. 1985).  As stated in <u>Black</u>, the trial judge's decision is simply whether "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification . . . The credibility or probative force of the evidence offered is, ultimately, an issue for the jury." <u>Id</u>. at 1342 (citing 5 J. Weinstein & M. Berger, <u>Weinstein's Evidence</u>, § 901(a)(1), at 901-17 (1983)).

H.  <u>Authentication of Computer Records and Child Pornography Images Taken from Computer</u>

Federal Rule of Evidence 901(a) provides that the requirement of authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).  Detailed evidence as to the chain of custody of defendant's HP laptop computer, Nikon Coolpix L100 digital camera, and the media card found within that camera, as well as Justin Lee's computer, constitutes proper authentication under this rule. <u>United States v. Salcido</u>, 506 F.3d 729, 733 (9th Cir. 2007) ("the government properly authenticated the videos and images under Rule 901 by presenting detailed evidence as to the chain of custody,

specifically how the images were retrieved from the defendant's computers.").

Further, Rule 901(b)(9) provides as one example of authentication evidence describing a "process or system" used to produce a result and showing "that the process or system produces an accurate result." Fed. R. Evid. 901(b)(9). This requirement is satisfied by expert testimony as how to the forensic software programs used to image defendant's laptop and digital camera media card, and clone Justin Lee's computer, operate.

I.    Party Admissions

In this case, defendant made voluntary statements to U.S. Postal Inspector Brian Bone and San Bernardino County Sheriff's Department Detective Jeremiah McKay after being informed of and waiving his Miranda rights. The government may be introducing some of those statements at trial. A defendant's statement is admissible only if offered against him by the government; a defendant may not elicit his own prior statements. See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985). The Ninth Circuit has made clear that a defendant is unable to elicit his own prior statements, either on direct examination of his own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay. See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

Statements not offered for their truth, but to provide context for what the defendant has said, such as the statements

14

of persons in a conversation with the defendant, are not hearsay. See United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990).

Evidence that is inadmissible is not made admissible by recitation to the rule of completeness. United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admitted regardless of Rule 106).

J.    Cross-Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  "The scope of the defendant's waiver is coextensive with the scope of relevant cross-examination." United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992) (citation omitted); Black, 767 F.2d at 1341 ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or of his waiver.  Rather, the inquiry is whether 'the government's questions are 'reasonably related' to the subjects covered by the defendant's testimony'") (citation omitted).

Federal Rule of Evidence 404(b) "restricts the use of evidence solely for purposes of demonstrating a criminal proclivity.  It does not proscribe the use of other act evidence as an impeachment tool during cross-examination." United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

//

K.    Impeachment of Witnesses

As a general rule, character witnesses called by the defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and interaction with the defendant; the witness must summarize the reputation or opinion of the defendant as known in the community.  Michelson v. United States, 335 U.S. 469, 477 (1948); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).

On cross-examination of defendant's character witnesses, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a); Michelson, 335 U.S. at 482-87.  The only prerequisite to such inquiries into specific instances of conduct is that there be a good faith basis that the incidents inquired about be relevant to the character trait at issue.  United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981); United States v. Bright, 588 F.2d 504, 511-12 (5th Cir. 1979).

L.    Expert Testimony

The government anticipates calling three expert witnesses. U.S. Postal Inspector Robert Werbick is a computer forensic examiner who searched defendant's HP laptop computer and the digital media card found inside defendant's Nikon Coolpix L100 digital camera.  Inspector Werbick will testify to, among other things, the process of extracting files and using searches to extract data from defendant's digital media, the location of certain image files, and the data regarding user access to those

16

image files.  FBI CART Forensic Examiner Christopher Pluhar will offer similar testimony regarding Justin Lee's computer.  U.S. Postal Inspector Brian Bone will testify regarding his search of Justin Lee's cloned computer and his identification of image files on that computer, some of which are alleged to be child pornography.

The Court has broad discretion to determine whether to admit expert testimony.  Pursuant to Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Moreover, an expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.

**V.**

**CONCLUSION**

The government respectfully requests permission to file supplemental trial memoranda as appropriate during trial, if necessary.

DATED: July 15, 2010            Respectfully submitted,

                                ANDRÉ BIROTTE JR.
                                United States Attorney

                                CHRISTINE C. EWELL
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____/s/_____
                                YVONNE L. GARCIA
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

17